**REVERSE and REMAND; and Opinion Filed November 5, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00002-CV

**PILOT TRAVEL CENTERS, LLC, Appellant**

V.

**JOAN MCCRAY, JAMES MCCRAY, AND SHAMEKIA GULLATTE,
AS NEXT FRIEND OF BRANDON GULLATTE, Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-09096-M**

### OPINION
Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Fillmore

In this interlocutory appeal, Pilot Travel Centers, LLC (Pilot Travel) asserts the trial court erred by denying its motion to compel arbitration and for a stay of the trial court proceedings against it. We reverse the trial court's order denying Pilot Travel's motion to compel arbitration and for stay of the trial court proceedings.

### Background

On January 18, 2011, James Antonio McCray (Tony)[1] began employment with Pilot Travel as a maintenance worker. Pilot Travel was a non-subscriber to the Texas Workers' Compensation insurance system; it provided an Occupational Injury Benefit Plan (Benefit Plan)

---

[1] The record indicates James Antonio McCray signed his name on Pilot Travel employment documents as "James McCray." In this opinion, we refer to James Antonio McCray as "Tony" in order to avoid confusion with our references to Tony's father, appellee James McCray.

for its Texas employees. Amendment 1 to the Benefit Plan is a Mandatory Arbitration Plan for Resolution of Work Related Injury or Illness Claims of Texas Employees (arbitration agreement). By its terms, the arbitration agreement indicates it is the exclusive and mandatory means for an employee and Pilot Travel to resolve their disputes arising from a work-related injury or illness, and neither an employee nor Pilot Travel "may bring a lawsuit in any state or federal court against the other regarding a work related injury or illness or the severity of alleged damages arising from a work related injury or illness." More specifically, paragraph 1.05 of the arbitration agreement provides:

> All employees, by applying for, accepting or by continuing employment after the implementation of this Plan, shall be required to submit any legally recognized claim for a work related injury or illness to arbitration, rather than to litigation, according to this Plan and the rules established for its enforcement. The Company shall also be required to proceed to arbitration on all work related injury or illness matters brought for arbitration by an employee. The duty imposed on both the Company and Employee to arbitrate all legally recognized claims arising from a work related injury or illness shall continue beyond and not be affected by, the termination of an employee's employment.

A document captioned "Employer Notice to Current Texas Employees" (Employer Notice), dated January 18, 2011, contains Tony's signature, initialing of paragraphs, and social security number, as well as the witness signature of Pilot Travel's representative, Brandy Allen. The Employer Notice contains an "Acknowledgment Receipt Regarding Mandatory Arbitration Plan for Texas Employees" which provides:

> I, James McCray hereby certify by my initials and signature below that I have received a copy of the Mandatory Arbitration Plan. I also understand that *ALL issues related to the work related injury or illness or benefits pertaining thereto MUST be settled through binding arbitration, not litigation, per Pilot Travel Centers' Mandatory Arbitration Plan.* Neither party shall have the right to file a suit in any state or federal court. Any such arbitration will be governed by the Federal Arbitration Act and administered by the American Mediation Association.

(Emphasis in original.)

On January 26, 2011, Tony was working within the course and scope of his employment with Pilot Travel at a truck stop in Dallas, Texas, when he was struck by a tractor trailer rig owned by Smile Transportation and operated by Ljubo Dilber. Tony died several weeks later as a result of the injuries he sustained. At the time of his death, Tony was survived by his parents, appellees Joan and James McCray, and his son, appellee Brandon Gullatte, as represented by his next friend, Shamekia Gullatte.

The record contains Pilot Travel's July 20, 2011 demand for arbitration before the American Mediation Association, which was received by the American Mediation Association on July 21, 2011. Pilot Travel referenced the "respondents in this arbitration" as "Joan and James McCray, Individually and as Next Friends of James Antonio McCray, Deceased; The Estate of James Antonio McCray; and Shemekia Gullatte, as next Friend of Brandon Gullatte, a Minor." Pilot Travel requested the arbitration be conducted in Dallas, Texas, where the accident occurred and where Tony was employed.

On July 22, 2011, appellees Joan and James McCray, and Shamekia Gullatte, as next friend of Brandon Gullatte, filed their original petition in a district court of Dallas County, Texas, against Pilot Travel and others in the lawsuit underlying this appeal. Appellees allege the negligence of Pilot Travel and the other named defendants proximately caused Tony's death and appellees' damages resulting from his death. On August 29, 2011, Pilot Travel filed its answer to appellees' lawsuit. Included in Pilot Travel's answer is the affirmative defense that the claims asserted in the lawsuit were the subject of a mandatory arbitration agreement signed by Tony. On September 6, 2012, Pilot Travel filed its motion to compel arbitration of appellees' claims and for a stay of appellees' lawsuit against it.

By order with a signature date of November 12, 2012, the trial court denied Pilot Travel's motion to compel arbitration (November 12, 2012 Order). The November 12, 2012 Order indicates that Pilot Travel's motion to compel arbitration was considered on November 16, 2012. By order with a signature date of December 12, 2012, the trial court again denied Pilot Travel's motion to compel arbitration (December 12, 2012 Order). Other than a mark through the November 12, 2012 date and a handwritten signature date of December 12, 2012, the December 12, 2012 Order is identical to the November 12, 2012 Order. On December 28, 2012, Pilot Travel filed its notice of interlocutory appeal of the denial of its motion to compel arbitration.

On January 16, 2013, the trial judge signed an order granting appellees' "Motion for Judgment Nunc Pro Tunc" (January 16, 2013 Order).[2] In the January 16, 2013 Order, the trial court found that the December 12, 2012 Order contained a clerical error; according to the trial court, the signature date of December 12, 2012 was incorrect and should have been November 16, 2012. In the January 16, 2013 Order, the trial court ordered the December 12, 2012 Order corrected to reflect the finding that the date of the trial judge's signature should be November 16, 2012.

On February 6, 2013, Pilot Travel filed its verified objection to the January 16, 2013 Order and motion to vacate that order.[3] In its motion to vacate the January 16, 2013 Order, Pilot Travel stated that on December 14, 2012, it received the trial court's December 12, 2012 Order denying Pilot Travel's motion to compel arbitration. Pilot Travel stated the December 12, 2012 Order was the only signed order it received regarding its motion to compel arbitration. Citing rule of civil procedure 306a and rule of appellate procedure 26.1(b), Pilot Travel asserted its

---

[2] The January 16, 2013 Order states the trial court considered appellees' "Motion for Judgment Nunc Pro Tunc, and the response thereto." However, the record contains no motion for judgment *nunc pro tunc*, nor any response by Pilot Travel to such a motion. *See* TEX. R. CIV. P. 316 (permits trial court to correct mistakes and incorrect recitals in judgments but only after reasonable notice of any application for correction is given to opposing party).

[3] In its objection to the January 16, 2013 order and motion to vacate that order, Pilot Travel stated it was never served with a motion for judgment *nunc pro tunc*.

–4–

timetable for filing an interlocutory appeal of the denial of its motion to compel arbitration began to run on December 12, 2012.

On May 1, 2013, the trial court signed an "Order on [Pilot Travel's] Motion for Court to Vacate Order Granting [Appellees'] Judgment Nunc Pro Tunc and Order Denying Motion to Compel Arbitration" (May 1, 2013 Order). In the May 1, 2013 Order, the trial court vacated its January 16, 2013 Order, and again denied Pilot Travel's motion to compel arbitration.

By letter dated February 19, 2013, this Court communicated to the parties to this interlocutory appeal that, after review of the record, it appeared Pilot Travel's notice of appeal of the trial court's denial of its motion to compel arbitration was untimely under rule of appellate procedure 26.1(b) and requested that the parties file a jurisdictional brief explaining how this Court has jurisdiction over this appeal. *See* TEX. R. APP. P. 26.1(b).

**Jurisdiction**

Section 51.016 of the civil practice and remedies code provides that in a matter subject to the Federal Arbitration Act (FAA), a party may appeal from an interlocutory order of a district court "under the same circumstances that an appeal from a federal district court's order . . . would be permitted by 9 U.S.C. Section 16." TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012); *see CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex. 2011) (explaining that section 51.016 of the civil practice and remedies code provides for interlocutory appeals in FAA cases so long as "it would be permitted under the same circumstances in federal court under [9 U.S.C.] section 16"). Section 16 of the FAA provides an appeal may be taken from an order "denying an application under section 206 of this title to compel arbitration." 9 U.S.C.A. § 16(a)(1)(C) (West 2009); *Austin Commercial Contractors, L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897, 900 (Tex. App.—Dallas 2011, pet. denied); *Texas La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872, 877 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

An appeal from an interlocutory order denying a motion to compel arbitration is an accelerated appeal. *See* TEX. R. APP. P. 28.1 ("Appeals from interlocutory orders (when allowed by statute) . . . are accelerated appeals."). In an accelerated appeal, absent a rule of appellate procedure 26.3 motion, the deadline for filing a notice of appeal is strictly set at twenty days after the appealable interlocutory order is signed. TEX. R. APP. P. 26.1(b); TEX. R. APP. P. 26.3; *see also In re K.A.F.*, 160 S.W.3d 923, 927 (Tex. 2005); *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 964 S.W.2d 762, 763 (Tex. App.—Amarillo 1998, no pet.) (interlocutory appeal is perfected by filing notice of appeal with trial court within twenty days after judgment or order is signed).

The notice of accelerated appeal of the November 12, 2012 Order denying Pilot Travel's motion to compel arbitration and for stay had to be filed within twenty days after the date the order was signed. Because the twentieth day after the November 12, 2012 Order fell on Sunday, December 2, 2012, Pilot Travel's deadline for perfecting the appeal from that order fell on the following day, Monday, December 3, 2012. *See* TEX. R. APP. P. 4.1(a).[4] Pilot Travel filed its notice of appeal on December 28, 2012, more than twenty days after the November 12, 2012 Order.

If applicable, rule of civil procedure 306a may operate to extend the deadline for filing a notice of appeal of an interlocutory order. *See* TEX. R. CIV. P. 306a; *see also John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 740 (Tex. 2001). If a party affected by an appealable order or the party's attorney has not, within twenty days after the order was signed, either received notice required by rule of civil procedure 306a(3) or acquired actual knowledge of the signing,

---

[4] On appeal, the parties do not dispute the trial court conducted a hearing on Pilot Travel's motion to compel arbitration on November 16, 2012. However, no reporter's record containing a transcript of the November 16, 2012 hearing has been filed with this Court. Even assuming the November 12, 2012 date of signature on the order was incorrect and should have been November 16, 2012, the deadline for filing a notice of accelerated appeal of a November 16, 2012 order denying Pilot Travel's motion to compel arbitration and for stay would have been December 6, 2012.

then any period that, under the rules of appellate procedure, runs from the signing of the order will begin on the earlier of the date when the party or the party's attorney receives notice or acquires actual knowledge of the signed order; however, no such period may begin to run more than ninety days after the judgment or order was signed. TEX. R. APP. P. 4.2(a)(1); *see also* TEX. R. CIV. P. 306a(4).

Subsection (5) of rule of civil procedure 306a provides a procedure that enables the trial court to change the date the appellate timetable begins to run from the actual date of the interlocutory order to the date on which the party or the party's attorney received the clerk's notice or acquired actual knowledge that the trial court signed the order, whichever occurs first, as long as that date is not more than ninety days after the trial court signed the interlocutory order. TEX. R. CIV. P. 306a(5). A party must obtain an order from the trial court that reflects the date the party or the party's attorney first either received notice or acquired actual knowledge that the order was signed. *Hone v. Hanafin*, 105 S.W.3d 15, 18 (Tex. App.—Dallas 2002), *rev'd on other grounds*, 104 S.W.3d 884 (Tex. 2003) (per curiam); *see* TEX. R. APP. P. 4.2(c); *Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.*, 126 S.W.3d 536, 540 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Nedd-Johnson v. Wells Fargo Bank, N.A.*, 338 S.W.3d 612, 613 (Tex. App.—Dallas 2010, no pet.); *Mem'l Hosp. of Galveston Cnty. v. Gillis*, 741 S.W.2d 364, 366 (Tex. 1987) ("Rule 306a plainly requires that this proof be made in the trial court, not the court of appeals.").

On September 25, 2013, the trial court signed an order on Pilot Travel's motion to reconsider Pilot Travel's request for factual finding under rule of civil procedure 306a(5). In that order, the trial court found that the date Pilot Travel or its attorney first received notice or acquired actual knowledge of a signed order denying its motion to compel arbitration and for stay was December 11, 2012, more than twenty days after the November 12, 2012 Order denying

Pilot Travel's motion to compel arbitration was signed by the trial court. Therefore, pursuant to rule of civil procedure 306a(4) and rule of appellate procedure 4.2(a)(1), the twenty-day deadline for filing Pilot Travel's notice of appeal of the denial of its motion to compel arbitration and for stay began on December 11, 2012. *See* TEX. R. CIV. P. 306a(4); TEX. R. APP. P. 4.2(a)(1).

Pilot Travel's notice of appeal was filed December 28, 2012, within twenty days from the date Pilot Travel or its attorney first received notice or acquired actual knowledge of a signed order denying its motion to compel arbitration and for stay. Thus, Pilot Travel's notice of appeal was timely perfected and this Court has jurisdiction over the accelerated appeal.

### Motion to Compel Arbitration and to Stay Trial Court Proceedings

In a single issue, Pilot Travel asserts that, because a valid arbitration agreement exists that is applicable to appellees' pleaded claims, the trial court erred in denying its motion to compel arbitration and to stay the trial court proceedings.

The arbitration agreement provides that the FAA applies to and governs any matter submitted to arbitration. *See In re Advance PCS Health, L.P.*, 172 S.W.3d 603, 605–06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam) (FAA governs arbitration in Texas if parties expressly contracted for FAA's application); *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex. App.—El Paso 2009, orig. proceeding) (if parties expressly choose for arbitration agreement to be governed by FAA, agreement should be enforced regardless of parties' nexus to interstate commerce). When a party asserts a right to arbitrate under the FAA, the question of whether the dispute is subject to arbitration is determined under federal law. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). As a matter of federal law, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration, whether pertaining to the construction of the contract or a defense to arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In general, a party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (although there is strong presumption favoring arbitration, presumption arises only after party seeking to compel arbitration proves a valid arbitration agreement exists). The party seeking to avoid arbitration then bears the burden of raising an affirmative defense to enforcement of the otherwise valid arbitration provision. *In re AdvancePCS Health*, 172 S.W.3d at 607. A court has no discretion and must compel arbitration if it is established that there is a valid arbitration agreement and the claims raised fall within the scope of that agreement. *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding). "An order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration cause is not susceptible of an interpretation that covers the asserted dispute." *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 575, 582–83 (1960)). To determine if a claim falls within the scope of an arbitration agreement, we focus on the facts alleged, not the causes of action asserted. *Hou-Scape*, 945 S.W.2d at 205.

We review de novo whether an enforceable agreement to arbitrate exits. *In re Jindal Saw, Ltd.*, 264 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding). We defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see also J.M. Davidson*, 128 S.W.3d at 227 (whether an agreement imposes a duty to arbitrate is question of law which is reviewed de novo); *Trammell v. Galaxy Ranch Sch., L.P.*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.). "This

standard is the same as the abuse of discretion standard of review and we will apply that standard of review to interlocutory appeals under section 51.016." *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.).

*Arbitration Agreement*

Existence of Arbitration Agreement Between Pilot Travel and Tony

Pilot Travel argues that it established a valid arbitration agreement existed between it and Tony. The record contains the "Acknowledgment Receipt Regarding Mandatory Arbitration Plan for Texas Employees" reflecting Tony's certification "by [his] initials and signature" on the date he was hired by Pilot Travel that he received a copy of the arbitration agreement and understood that all issues "related to the work related injury or illness or benefits pertaining thereto must be settled through binding arbitration" governed by the FAA and administered by the American Mediation Association, and that neither he nor Pilot Travel had the right to file suit in any state or federal court. Further, that Acknowledgment was signed by a company representative.

While appellees do not contest that the arbitration agreement was incorporated into Pilot Travel's Benefit Plan, appellees contend Pilot Travel failed to establish the arbitration agreement was signed by Tony or that he "assented to arbitration." Pilot Travel is unable to "authenticate" Tony's signature on the "Acknowledgement Receipt Regarding Mandatory Arbitration Plan for Texas Employees" through questioning him. *Cf. In re Halliburton Co.*, 80 S.W.3d 566, 568 n.2 (Tex. 2002) (orig. proceeding) (in response to motion to compel arbitration of employee's claim of employment discrimination, employee asserted signature on a document agreeing to binding arbitration was not his). During her deposition, appellee Joan McCray testified she recognized Tony's signature on the arbitration agreement, although she later apparently "disavowed" her

–10–

answer "since she is neither a handwriting expert nor had she paid close attention to [Tony's] signature in more than ten years."

Ultimately, appellees' argument fails because their response in opposition to Pilot Travel's motion to compel arbitration is unverified. Appellees have cited no authority, and we are aware of none, requiring Pilot Travel in this circumstance to "authenticate" Tony's signature on the arbitration agreement. *See* TEX. R. CIV. P. 93(7) (pleading setting up denial of execution of instrument in writing shall be verified by affidavit; where party denying execution of a document by person then deceased, affidavit shall be sufficient if it states affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority); TEX. R. EVID. 601(b) (Dead Man's Rule); *Munden v. Chambless*, 315 S.W.2d 355, 358 (Tex. Civ. App.—Dallas 1958, writ ref'd n.r.e.) (test of whether evidence should be excluded under Dead Man's Statute is whether, "in case the witness testified falsely, the deceased, if living could contradict the testimony of his own knowledge"). Based on the documentation in the record, we agree with Pilot Travel that it established a valid and enforceable arbitration agreement existed between it and Tony.

<u>Appellees as Non-Signatories to Arbitration Agreement</u>

Appellees Joan and James McCray are Tony's surviving parents, and appellee Brandon Gullatte, represented by his mother as his next friend, is Tony's surviving son. Appellees' wrongful death claims against Pilot Travel are made in their capacities as the surviving parents and child of Tony. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004 (West 2008) (action to recover damages as provided by this subchapter is for exclusive benefit of surviving spouse, children, and parents of the deceased). Appellees argue that as non-signatories to the arbitration agreement between Pilot Travel and Tony, their claims are not subject to the arbitration

agreement. They argue their claims are not derivative of any rights that belonged to Tony had he survived.

Paragraph 1.02 of the arbitration agreement defines the term "employee" to include the employee and "any individual, child, dependent, spouse, relative, executor, estate or guardian which would have the legal standing required to bring a lawsuit for damages arising out of a claim." Paragraph 1.04 of the arbitration agreement provides as follows with regard to claims arising from work-related injuries or illnesses:

> As used in this Plan, "Claim," "Controversy," "Dispute" or "Difference" means any claim, dispute, disagreement, contention, or grievance arising from a work related injury or illness which an Employee has with the Company, or the Company has with the Employee, which could normally be made the basis of a lawsuit in a State or Federal Court. This pertains only to those claims, controversies, disputes or differences for work related injuries and illnesses.
>
> This Plan DOES NOT provide for resolution of disputes arising from any claim, dispute, disagreement, contention or grievance other than those arising from a work related injury or illness.

(Emphasis in original.)

The Texas Supreme Court has held that wrongful death beneficiaries, as derivative claimants, are bound by the decedent's agreement to arbitrate. *In re Golden Peanut Co.*, 298 S.W.3d 629, 630 (Tex. 2009) (orig. proceeding); *In re Labatt Food Serv.*, 279 S.W.3d at 646 (decedent's pre-death arbitration agreement binds his wrongful death beneficiaries because, under Texas law, the wrongful death cause of action is entirely derivative of the decedent's rights); *Arredondo v. Dugger*, 347 S.W.3d 757, 764 (Tex. App.—Dallas 2011) (citing *In re Golden Peanut Co.*, 298 S.W.3d at 631), *aff'd on other* grounds, *Dugger v. Arredondo*, No. 11-0549, 2013 WL 4608741 (Tex. Aug. 30, 2013).[5]

---

[5] Appellees assert that even if this Court concludes the arbitration agreement is enforceable, appellees' loss of consortium claims are not subject to the arbitration agreement. As was explained in *In re Labatt Food Service*, a tort action seeking damages for loss of consortium arises from nonfatal injuries to a parent or child and are not entirely derivative as are wrongful death claims. 279 S.W.3d at 646. However, "[a] wrongful death action is different than a loss of consortium claim because the Wrongful Death Act expressly conditions the beneficiaries' claims on the decedent's right to maintain suit for his injuries." *Id.*

Pursuant to the arbitration agreement, if Tony sued Pilot Travel for his own injuries prior to his death, he would have been compelled to arbitrate his claims. Texas law and the arbitration agreement therefore provide that all of the claims asserted by appellees against Pilot Travel are subject to mandatory binding arbitration as agreed to by Tony. Accordingly, appellees' argument that they are not bound to arbitrate because they are not signatories to Tony's arbitration agreement with Pilot Travel is not persuasive.

### Conclusion

We conclude Pilot Travel established the existence of an arbitration agreement and that appellees' claims against it fall within that agreement's scope.

### *Unconscionability of Arbitration Agreement*

Appellees contend the arbitration agreement is invalid and unenforceable because under Texas contract law it is procedurally and substantively unconscionable. Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *see also In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per curiam) (once party establishes a claim within scope of an arbitration agreement, trial court must compel arbitration unless other party presents evidence agreement was procured in unconscionable manner, induced or procured by fraud or duress, or waived), *abrogated in part on other grounds by In re Halliburton*, 80 S.W.3d at 572. Unconscionability of an arbitration agreement may exist in one or both of two forms: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton*, 80 S.W.3d at 571. Whether a contract is unconscionable at the time it is formed is a question of law. *In re Poly-America, L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (orig. proceeding). A trial court has no discretion to determine

–13–

what the law is or to apply the law incorrectly, and a failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *Id.*

Procedural Unconscionability

In response to Pilot Travel's motion to compel arbitration, appellees argued the arbitration agreement is procedurally unconscionable because it was difficult for an unsophisticated man like Tony to understand, and Pilot Travel knew Tony's level of education, and was aware of his lack of sophistication, based on information contained in his application for employment. Appellees further argue the procedural unconscionability of the arbitration agreement based on Tony's lack of input concerning the terms of the agreement and the one-sided character of the agreement which Tony had to accept or forego employment by Pilot Travel.

Appellees' unverified response to Pilot Travel's motion to compel arbitration contained no evidence the arbitration agreement is procedurally unconscionable. Further, there is no evidence in the record establishing Tony's lack of education and "sophistication" as argued by appellees. With regard to appellees' argument that the arbitration agreement was procedurally unconscionable because Tony had to accept the arbitration agreement terms to be employed by Pilot Travel, the Texas Supreme Court has recognized that an employer may make precisely such a "take it or leave it" offer to its at-will employees. *See In re Halliburton*, 80 S.W.3d at 572 (rejecting argument that disparity in bargaining power between employer and employee rendered arbitration agreement procedurally unconscionable) (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex. 1986)). Mere inequality of bargaining power is not a sufficient reason to hold an arbitration agreement unenforceable in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). On this record, nothing about the

specific circumstances surrounding the adoption of the arbitration agreement shows it to be procedurally unconscionable.

Substantive Unconscionability

With regard to their argument the arbitration agreement is substantively unconscionable, appellees contended in their response to Pilot Travel's motion to compel arbitration that the costs and fees to arbitrate their wrongful death claims effectively preclude them from vindicating their rights because they are indigent. Further, appellees stated they live in Alabama and the travel expenses to Texas are more than they can bear; yet appellees also indicated that "court costs" to litigate before a jury have been "very costly but manageable." Finally, appellees argued the limitations on discovery contained in the arbitration agreement are substantively unconscionable.

Addressing first appellees' argument that arbitration conducted in Texas will be prohibitively expensive for them, we note appellees filed their wrongful death lawsuit in Texas, and there is no evidence in the record that arbitration in Texas will entail greater travel expense than litigation of the wrongful death case in a Texas state court. Moreover, the arbitration agreement indicates that the party seeking arbitration (Pilot Travel) shall pay the American Mediation Association filing fee. The arbitration agreement further provides that the costs and fees charged by the arbitrator shall be borne equally by the parties; however, the arbitrator shall have the discretion, upon request of a party and for good cause, "to reapportion the arbitration fees (except attorney fees) and costs in a manner which the arbitrator deems equitable." According to the terms of the arbitration agreement, "in no event would an employee be assessed more than one-half of the arbitration fees (except attorney fees) and costs." An agreement that provides for fee-splitting is not, by itself, unconscionable. *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 860 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding). There is no evidence in the record that appellees do not have the financial ability to pay a portion of the arbitrator's fees.

–15–

Appellees admit in their brief that appellee James McCray makes a living wage and that "Appellee Shamekia Gullatte is a registered nurse." Appellees cannot point to evidence of severe monetary constraints that would effectively preclude participation in arbitration. Further, there is no evidence in the record supporting appellees' assertion an arbitration will be more costly than litigating appellees' wrongful death claims in state court.

By the express terms of the arbitration agreement, remedies available to appellees in arbitration shall be the same remedies available to them in a state court proceeding. With regard to the amount of discovery permitted, paragraph 1.17 of the arbitration agreement provides:

> Unless so ordered by the arbitrator, and only upon a showing of good cause, no more than three (3) depositions, excluding depositions of expert witnesses, may be taken by any party. No single deposition may exceed four (4) hours. Interrogatories may be utilized by any party. Each party is allowed two (2) sets of Interrogatories requiring no more than twenty (20) separate responses per set (subset requests such as IA, IB or questions requesting multiple answers shall each count as one response). The arbitrator shall have sole authority to determine which discovery procedures are necessary and appropriate in the case to reduce the time, cost and expense of the discovery process, while still affording each party a fair opportunity to prepare its case. Requests for Production may be utilized by any party upon approval by the arbitrator. Requests for Admission may be utilized by any party upon approval by the arbitrator. Unless a greater time is allowed by the requesting party, Interrogatories, Requests for Production and Requests for Admission shall be answered or objected to within thirty (30) days from the date of service.

Under the arbitration agreement, the parties are permitted the same amount of discovery. *See In re Poly-America*, 262 S.W.3d at 357–58 (discovery limitations in arbitration agreement applied equally to both sides and were not per se substantively unconscionable; limitations that operate to prevent effective presentation of claim are unenforceable, but that determination is best left to arbitrator as case unfolds). Appellees contend they need to conduct discovery beyond that contemplated by the arbitration agreement. However, appellees acknowledge written discovery has been exchanged and depositions have previously been taken in the lawsuit. In addition, the arbitration agreement provides that upon a showing of good cause, a party may obtain an order

–16–

from the arbitrator for taking additional depositions, and may obtain approval from the arbitrator to utilize requests for production and for admissions. At this point in the proceeding, we cannot conclude that the evidence presented to the trial court compelled a finding that the discovery limitations were per se unconscionable. *See id.* at 358.

Substantive unconscionability refers to fairness of an arbitration provision. *See In re Halliburton*, 80 S.W.3d at 571. Here, the terms of the arbitration agreement do not favor either party. Appellees have not established that the cost of arbitration or the discovery limitations contained in the arbitration agreement will prevent them from effectively presenting their wrongful death claims. On this record, appellees failed to establish the terms of the arbitration agreement are substantively unconscionable.

### Conclusion

Appellees failed to establish procedural or substantive unconscionability as a defense to Pilot Travel's motion to compel arbitration.

### *Waiver of Arbitration Agreement*

A party may waive contractual arbitration rights by substantially invoking the judicial process to the detriment of the other party. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). As a defense to Pilot Travel's motion to compel arbitration, appellees contend Pilot Travel waived arbitration and that they were prejudiced by Pilot Travel invoking the judicial process.

### Standard of Review and Applicable Law

Waiver of contractual arbitration rights is a question of law that this Court reviews de novo. *Id.* at 598; *see also Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex. App.—Dallas 2010, no pet.). Because public policy favors resolving disputes through arbitration, the law imposes a strong presumption against the waiver of contractual arbitration

–17–

rights. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding); *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex 2006) (orig. proceeding) (per curiam) (there is a strong presumption against waiver under the FAA). When presented with questions of waiver, we are required to resolve any doubts in favor of arbitration. *In re Oakwood Mobile Homes*, 987 S.W.2d at 574. The standard for determining waiver is the same under federal and state law. *See Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.). Waiver may be implied from a party's conduct, so long as that conduct is unequivocal. *Perry Homes*, 258 S.W.3d at 593. In "close cases, the 'strong presumption against waiver' should govern." *Id*. (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding)).

As the parties claiming waiver, appellees had the heavy burden of establishing Pilot Travel substantially invoked the judicial process. *See Bruce Terminix*, 988 S.W.2d at 704; *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 648 (Tex. App.—Dallas 2011, pet. denied). In determining whether appellees met their burden, we must examine the case-specific facts and look to the totality of the circumstances. *See Perry Homes*, 258 S.W.3d at 591 (whether a party has waived arbitration must be decided on a case-by-case basis, based upon an examination of the totality of the circumstances). The judicial process is substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763. Factors considered in determining whether a movant has substantially invoked the judicial process include when the movant knew of the arbitration clause, how much discovery has been initiated and who initiated it, the extent to which discovery related to the merits rather than arbitrability or standing, how much of the discovery would be useful in arbitration, whether the

movant sought judgment on the merits, and whether the movant sought to compel arbitration on the "eve of trial." *Perry Homes*, 258 S.W.3d at 590–92.

In addition to their burden of showing Pilot Travel substantially invoked the judicial process, appellees had the burden to show prejudice. *See id*. at 595 ("waiver of arbitration requires a showing of prejudice"). "Prejudice" in the context of waiver of contractual arbitration rights "refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id*. at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). "Thus, 'a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party.'" *Id*. (quoting *In re Tyco Inti'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 n.5 (1st Cir. 2005)).

<u>Substantial Invocation of Judicial Process</u>

On July 20, 2011, Pilot Travel demanded arbitration before the American Mediation Association. On July 22, 2011, appellees filed their original petition and request for disclosures. Pilot Travel's original answer filed on August 29, 2011 included the affirmative defense that appellees' claims against Pilot Travel were the subject of a binding arbitration agreement. *See In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (burden of demonstrating waiver "falls even more heavily" when the party seeking arbitration included a demand for arbitration in its original answer) (quoting *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005)). Pilot Travel filed its motion to compel arbitration and for stay of the trial court proceedings against it on September 6, 2012. Appellees filed their response to Pilot Travel's motion to compel arbitration on October 11, 2012.

Appellees assert they have expended considerable time and resources responding to Pilot Travel's "actions in litigation." According to appellees, Pilot Travel gained valuable information "during discovery," especially from depositions that "potentially" would not have been available in arbitration. Appellees also state their "pretrial strategy would have been substantially different" had Pilot Travel filed its motion to compel arbitration earlier. Appellees state they have "endured two years of litigation including being deposed, answering interrogatories, interstate traveling and so forth."

With regard to appellees' argument that Pilot Travel waived arbitration by its delay in seeking an order from the trial court compelling arbitration, delay alone generally does not establish waiver. *See In re Vesta Ins. Group*, 192 S.W.3d at 763. The record shows a period of approximately one year between the time Pilot Travel answered the lawsuit and the time it filed its motion to compel arbitration. Greater delays in moving to compel arbitration have been insufficient to constitute waiver of arbitration rights. *See*, *e.g.*, *id.* (litigating for two years in trial court insufficient to overcome presumption against waiver). We must consider this delay in the context of other factors affecting the litigation process. *Small*, 310 S.W.3d at 639.

We note there was no evidentiary hearing and no reporter's record of argument before the trial court concerning Pilot Travel's motion to compel arbitration. The trial court made no findings pertinent to the merits of Pilot Travel's motion to compel arbitration. Appellees do not cite to evidence purportedly presented to the trial court, nor can appellees cite to any evidence in the record, that demonstrates Pilot Travel substantially invoked the judicial process. *See Small*, 310 S.W.3d at 645–46, 649 (record did not support argument that movants had waived their right to arbitration by invoking the judicial process to the prejudice of nonmovant; record contained no reporter's record of argument before the trial court, no evidentiary hearing regarding the motion to compel arbitration, and no trial court findings).

The quantum of litigation conduct that will be deemed "substantial" depends very much on the context. *See Perry Homes*, 258 S.W.3d at 593; *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89–90 (Tex. 1996) (per curiam) (party did not waive arbitration right by answering the suit, participating in docket control conference, propounding requests for production and interrogatories, noticing plaintiff's deposition, and entering into an agreed order to reset the original trial date); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576–78 (5th Cir. 1991) (party did not waive arbitration right by propounding interrogatories and requests for production, attending pretrial conference, and delaying thirteen months before filing motion to compel arbitration).

In response to Pilot Travel's motion to compel arbitration, appellees argued Pilot Travel invoked the judicial process by consenting to co-defendants' removal of the state court litigation to federal court, participating in scheduling conferences in federal and state court, agreeing to trial dates in state and federal court, and signing scheduling orders in federal and state court.[6] By appellees' own admission, Pilot Travel did not "invoke" the judicial process with regard to removal of the case to federal court, but rather consented to co-defendants' removal of the case. We disagree that by purported agreement to trial settings, Pilot Travel "sought judgment on the merits" as argued by appellees. Further, the record contains no evidence of scheduling orders or trial dates in the lawsuit during its pendency in either federal or state court.[7]

In their appellate brief, appellees state the discovery in this lawsuit "has been pretty extensive" between appellees and Pilot Travel's co-defendants, and the exchange of discovery

[6] According to appellees, because of a lack of complete diversity jurisdiction, the federal case was remanded to state court. The record contains no evidence of when the case was removed to federal court or remanded to state court. The docket sheet from the state court litigation references removal and remand. However, docket sheets are not part of the record. *See Energo Int'l Corp. v. Modern Indus. Heating, Inc.*, 722 S.W.2d 149, 151 & n.2 (Tex. App.—Dallas 1986, no writ) (docket sheet entries are not part of the record which may be considered because they lack the formality of orders and judgments; rather, docket sheet entry is a memorandum made for the convenience of the trial court and clerk).

[7] Appellees state in their response to Pilot Travel's motion to compel arbitration that the case was set for trial on July 23, 2012. However, appellees do not argue that Pilot Travel invoked the judicial process by seeking a continuance of that trial setting.

between appellees and Pilot Travel's co-defendants has "greatly benefitted" Pilot Travel because it received copies of the discovery exchanged. Appellees do not contend Pilot Travel has initiated discovery; instead, they argue Pilot Travel has not needed to initiate discovery because of the discovery exchanged between appellees and Pilot Travel's co-defendants. Further, appellees assert Pilot Travel participated in discovery by "significantly" deposing three parties, co-defendant Dilber and appellees Joan McCray and Shamekia Gullatte. However, appellees do not contend Pilot Travel invoked the judicial process by noticing any of the parties for deposition; instead, they argue that by merely participating in the depositions, Pilot Travel invoked the judicial process.

Appellees' arguments regarding discovery concern matters that are not reflected in the record. No discovery was admitted into evidence or attached to appellees' response to Pilot Travel's motion to compel arbitration. Because appellees offered none of the discovery documents as evidence in the trial court and presented no details about any of them, the record does not show whether the written discovery was limited or extensive, sought information for affirmative or defensive issues, or whether the discovery addressed the merits of the lawsuit. Further, appellees do not allege that the discovery already conducted would not be useful in arbitration. *See In re Vesta Ins. Group*, 192 S.W.3d at 763 (noting that no prejudice from allegedly "extensive discovery" was shown where party opposing arbitration failed to present evidence detailing the discovery conducted and failed to allege discovery already conducted would not be useful in arbitration); *see Small*, 310 S.W.3d at 648 (appellee did not claim discovery already exchanged could not be used in arbitration).

The supreme court in *Perry Homes* emphasized facts that would constitute waiver: "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial." *Perry Homes*, 258 S.W.3d at 590 (quoting *In re Vesta Ins. Group*, 192

–22–

S.W.3d at 764)). Here, the record does not show Pilot Travel filed a motion on the merits, engaged in extensive discovery, or sought arbitration on the eve of trial. *See Small*, 310 S.W.3d at 645–47.

Prejudice

Additionally, appellees did not present any evidence that they suffered prejudice. "Prejudice" in the context of waiver of a contractual right to arbitration means "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597; *see also In re Bruce Terminix Co.*, 988 S.W.2d at 704 (noting that even substantial invocation of judicial process does not constitute waiver absent proof of prejudice). In appellees' brief they state Pilot Travel's "delay" and "actions" caused them "detriment and prejudice in terms of burgeoning and unnecessary legal fees, etc." We question whether this argument was made before the trial court. In their response to Pilot Travel's motion to compel arbitration, appellees state Pilot Travel delayed in moving to compel arbitration which resulted in appellees "expending considerable time and resources." Assuming this argument can be construed to comport with appellees' argument on appeal, the record is void of evidence relating to legal fees and expenses incurred as a result of Pilot Travel's allegedly invoking the litigation process to appellees' detriment. *See id*. Further, although appellees argue their "pretrial strategy" would have been "substantially different" had Pilot Travel filed its motion to compel arbitration earlier, appellees have not established how their legal position has been prejudiced. Appellees have not carried their burden to establish expense or damage to their legal position as a result of Pilot Travel's alleged invoking the judicial process to appellees' detriment.

<u>Conclusion</u>

On this record and considering the totality of the circumstances in this case, we conclude appellees have not met their heavy burden of establishing Pilot Travel waived arbitration by substantially invoking the judicial process, nor have they demonstrated sufficient prejudice to overcome the strong presumption against waiver of arbitration.

*Section 1 of the FAA*

According to appellees, the arbitration agreement is unenforceable under section 1 of the FAA. Section 1 is an exemption provision and it provides the FAA does not apply "to contracts of employment of seamen, railroad employees, or any other class of worker engaged in foreign or interstate commerce." 9 U.S.C.A. § 1 (West 2009). Appellees argued to the trial court in their response to Pilot Travel's motion to compel arbitration that "nothing in the FAA applies to employment contracts of workers engaged in interstate commerce." More specifically, appellees argued to the trial court that Tony was a maintenance worker for Pilot Travel and a large portion of Pilot Travel's business "involves providing fuel, rest facilities, food, etc. for truck drivers of 18-wheeler tractor trailers." According to appellees, "these drivers and their trucks are engaged in interstate commerce daily" and, "[b]y extension, workers who maintain the parking lots and facilities that service these trucks as well as providing other services to these truckers and their trucking companies are directly engaged in interstate commerce."

Appellee's argument that "nothing in the FAA applies to employment contracts of workers engaged in interstate commerce" has been previously rejected by the United States Supreme Court and by this Court. The United States Supreme Court has held that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001). Many years prior to the decision in *Adams*, this Court concluded that section 1's exemption related only to employment contracts of workers

"actually engaged in the movement of goods in interstate commerce." *White-Weld & Co. Inc. v. Mosser,* 587 S.W.2d 485, 487 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (employee who sold government bonds not engaged in movement of goods in interstate commerce for purposes of section 1 exclusion) (citing *Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir. 1971)).

While appellees also argue that workers who maintain parking lots and facilities at a truck stop are "by extension" engaged in interstate commerce, there is no evidence in this record to support an argument Tony was a transportation worker actually engaged in the movement of goods in interstate commerce within the meaning of the exemption of section 1 of the FAA. *See Adams,* 532 U.S. at 119; *Mosser*, 587 S.W.2d at 487. Instead, the record indicates Tony was employed as a truck stop maintenance worker, and as a maintenance worker Tony was no more engaged in the movement of goods in interstate commerce than a clerk in a truck stop convenience store or wait staff in a truck stop restaurant. The facts on this record are insufficient to trigger the exemption in section 1 of the FAA. *See Cole v. Burns Int'l Sec. Servs*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) (security guard at Union Station in Washington, D.C. not engaged in transportation of goods in commerce for purposes of section 1 exclusion). Accordingly, we are not persuaded by appellees' defense to Pilot Travel's motion to compel arbitration based on section 1 of the FAA.

*Section 171.002 of the Texas Arbitration Act*

The arbitration agreement provides the FAA shall apply to and govern any matter submitted to arbitration pursuant to Pilot Travel's Benefit Plan, and that in the event or to the extent the FAA may be determined to be inapplicable, "and only in such an event," the Texas General Arbitration Act (TAA) shall apply. In defense to Pilot Travel's motion to compel arbitration, appellees assert that because section 1 of the FAA does not apply to employment contracts of workers engaged in interstate commerce, section 171.002 of the TAA applies and

–25–

exempts this matter from arbitration. Section 171.002 of the TAA excludes claims for personal injury from arbitration under the TAA unless each party to the claim, on the advice of counsel, agrees in writing to arbitrate and the agreement is signed by each party and each party's attorney. TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3), (c) (West 2011); *see also In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (TAA interfered with enforceability of arbitration agreement governed by FAA by adding requirement of signature of a party's counsel to arbitration agreements in personal injury cases, and FAA preempts the TAA); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) ("Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions."). Here, the parties do not dispute that appellees' wrongful death claims are personal injury claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.002(b) (West 2008) (person is liable for damages arising from an injury that causes an individual's death if injury was caused by person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default). Pilot Travel does not contend Tony was represented by an attorney at the time of signing the arbitration agreement or that an attorney for Tony signed the arbitration agreement. However, as discussed above, we conclude section 1 of the FAA does not exempt this matter from arbitration. Therefore, appellees' argument that section 171.002 of the TGAA exempts this matter from arbitration is unpersuasive.

**Conclusion**

The trial court abused its discretion by refusing to compel arbitration of appellees' claims against Pilot Travel. Under the FAA, a trial court must stay the litigation of issues that are subject to arbitration. *See* 9 U.S.C.A. § 3 (West 2009). The trial court's order denied Pilot Travel's motion to compel arbitration and for stay in "all respects." Therefore, it appears the trial court, in addition to denying Pilot Travel's motion to compel arbitration, also denied Pilot

–26–

Travel's motion to stay further litigation of appellees' claims against it.  Having concluded the trial court erred in failing to compel arbitration of appellees' claims asserted against Pilot Travel, the trial court also erred in failing to stay further litigation of those claims.  *See Courtland Bldg. Co., Inc. v. Jalal Family P'ship, Ltd.*, 403 S.W.3d 265, 276 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Accordingly, we reverse the order of the trial court denying Pilot Travel's motion to compel arbitration and for stay of the trial court proceedings and remand the case to the trial court for further proceedings consistent with this opinion.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130002F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PILOT TRAVEL CENTERS, LLC,
Appellant

No. 05-13-00002-CV      V.

JOAN MCCRAY, JAMES MCCRAY, AND
SHAMEKIA GULLATTE, AS NEXT
FRIEND OF BRANDON GULLATTE,
Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-11-09096-M.
Opinion delivered by Justice Fillmore,
Justices Moseley and Myers participating.

In accordance with this Court's opinion of this date, the order of the trial court denying Pilot Travel Centers, LLC's motion to compel arbitration and for stay of trial proceedings against it is **REVERSED**, and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Pilot Travel Centers, LLC recover its costs of this appeal from appellees Joan McCray, James McCray, and Shamekia Gullatte, as Next Friend of Brandon Gullatte.

Judgment entered this 5th day of November, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE